THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

(No. 44657—Decided December 9, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. James R. Willis,* for appellant, Willie Davis.

MARKUS, J. Defendant appeals from his convictions for aggravated murder and attempted aggravated murder, contending that there was insufficient evidence to support those convictions and that the trial court's instructions to the jury erroneously required defendant to prove the defense of self-defense.[1] We find insufficient evidence of "prior calculation and design," so we reduce the aggravated murder conviction to murder,

---

[1] Defendant asserts as his assignments of error for our review:

"I. The court erred in denying the defendant's various motions for judgment of acquittal and his motion for a new trial.

"II. The defendant was denied due pro-

cess as a consequence of the court's instruction that he had to establish, as a prerequisite to even raising the defense of self-defense, that the decedent was the aggressor — this instruction diluted the prosecution's burden of proving all the elements of the offenses charged.

"III. The court erred in charging the jury that to prevail on a plea of self-defense, the defendant was required to, in effect, prove himself not guilty."

but we otherwise affirm the trial court's judgment.

## I

Evidence at the trial showed that defendant sought to enter a bar when he was confronted by a doorman who requested his identification card. The doorman testified that he asked everyone whom he suspected was less than twenty-one years of age to show identification as the patrons entered. Defendant told the doorman that his identification was in the car, that he felt he was being singled out, and that he personally knew the bar owner. The doorman again refused defendant's entry.

The bar owner and another patron observed the evolving commotion from a few feet away. Within a few seconds, the bar owner inquired about the problem. Although the owner recognized defendant, he again verbalized the bar's policy against admission of a patron without proper identification. Several other witnesses testified that defendant became belligerent, verbally abusive, and threatening. They said defendant challenged the doorman and the owner by taunting, "If you two punks want me out, you have to get me out." These witnesses testified that the bar owner requested a friend to call the police when defendant refused to leave. These witnesses also testified that defendant then punched the doorman in the back of the head, knocking him down.

The owner and another patron tussled with defendant in order to restrain him and remove him from the bar. The patron witnesses testified that three shots were heard a few seconds later. A bullet hole in defendant's trousers demonstrated that defendant fired the shots while the gun remained in his trouser pocket. One shot hit the doorman in the abdomen. The other shots hit the owner and caused his death. The deputy coroner testified that one bullet entered the owner's lower abdomen, and another bullet entered his chest cavity and traveled diagonally downward toward the abdomen.

Defendant testified that he hit the doorman only after it became apparent to him that the doorman was about to strike him. Additionally, defendant testified that he shot his weapon blindly, while he was being beaten by three men inside the bar. Defendant stated that the three men had "hooded" his head with the hood attached to his jacket, so he could not see his attackers.

Defendant left the bar immediately after the shootings. One of the patrons retrieved a gun from the bar and followed defendant a few steps out the door. Additional gunfire was exchanged in the parking lot, but defendant fled without further bloodshed. The owner died on route to the hospital, and the doorman survived after several emergency operations. Defendant surrendered to the police the next day, when he learned that police investigation began to focus on him.

## II

In his first assignment of error, defendant contends there was not sufficient evidence from which a reasonable jury could find guilt of these offenses beyond a reasonable doubt. Specifically, defendant asserts that the evidence does not support a finding of "prior calculation and design" required for the aggravated murder conviction, and that all evidence presented at trial demonstrates his theory of self-defense.

This court discussed the requirement of prior calculation and design in *State* v. *Jenkins* (1976), 48 Ohio App. 2d 99, at 101-102 [2 O.O.3d 73]:

"Prior calculation and design sets up a more demanding standard than the old first degree murder standard of 'deliberate and premeditated malice.' Prior calculation and design requires the accused to have killed purposefully after devising a plan or scheme to kill. There must be some kind of studied analysis with its object being the means by which

to kill. The kind of momentary deliberation or instantaneous premeditation that was the accepted standard under the old statute, as exemplified by *State* v. *Schaffer* (1960), 113 Ohio App. 125 [17 O.O.2d 114], is no longer sufficient or acceptable."

See, also, *State* v. *Toth* (1977), 52 Ohio St. 2d 206 [6 O.O.3d 461]; *State* v. *Cotton* (1978), 56 Ohio St. 2d 8 [10 O.O.3d 4]; *State* v. *Robbins* (1978), 58 Ohio St. 2d 74 [12 O.O.3d 84].

We agree with defendant's contention that the evidence does not support a finding that defendant killed the owner of the bar with prior calculation and design. Defendant did not go to the bar with the intent of shooting either of these two men. Rather, defendant went to the bar "to have a good time" but was refused admittance. After defendant demanded entrance, verbal threats grew into a physical confrontation between defendant and the three persons within the bar. Defendant did not reach for his gun in his pocket until he was outnumbered and getting the worse of their treatment. No evidence was presented which demonstrated a previous strained relationship between defendant and the doorman or the bar owner. The mere fact that defendant was carrying a gun on this occasion but was not carrying a gun on some earlier visit to a different bar is not sufficient to demonstrate a prior calculation and design to kill someone at this bar.

The shooting occurred during an almost "instantaneous eruption of events." *State* v. *Jenkins, supra,* at 103. In our judgment, the record does not reflect the studied analysis that must reinforce prior calculation and design. Compare *State* v. *Sumlin* (June 29, 1978), Cuyahoga App. No. 37559, unreported (defendant not guilty of aggravated murder where defendant went to his car, reached for a gun and killed the victim after being assaulted by the victim), with *State* v. *Curik* (Oct. 9, 1980), Cuyahoga App. No. 41826, unreported (defendant guilty of aggravated murder where defendant searched for victim for three hours with gun in hand in order to kill him for burglarizing defendant's house).

However, while the trial court may have erred in submitting the issue of whether defendant acted with prior calculation and design, the record does support a conviction of murder. This court has authority to reduce the conviction to a lesser included offense which is supported by the record, rather than ordering an acquittal or a retrial. See *State* v. *Sumlin, supra.*

R.C. 2903.02(A) defines "murder":

"No person shall purposely cause the death of another."

The jury may reasonably infer that a person intends the natural, reasonable and probable consequences of his voluntary acts. *State* v. *Williams* (1975), 47 Ohio App. 2d 330, 334 [1 O.O.3d 393]. This jury did find all the elements of murder had been proved beyond a reasonable doubt, when it found defendant guilty of aggravated murder.

Defendant contends the trial court erred by submitting to the jury the question of his culpability because of the circumstantial nature of the evidence. His contention is rejected by the rule aptly stated in *Williams, supra,* at 337:

" 'However, it should also be stated that where there are two *reasonable inferences* arising from the circumstantial evidence in a case, one of *guilt* and *another of innocence,* it is not the duty or right of this Court to reverse simply because *we* might believe the circumstances to not exclude every reasonable hypothesis of innocence. It is the jury's function, not ours, to *weigh conflicting evidence* or uncontradicted evidence from which *conflicting, yet reasonable,* inferences may be drawn and then determine whether such evidence excludes every reasonable hypothesis of innocence. * * *' " (Emphasis *sic*.)

The syllabus of *State* v. *Bridgeman*

(1978), 55 Ohio St. 2d 261 [9 O.O.3d 401], provides:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

We hold that the trial court did not err in submitting these issues to the jury. Sufficient evidence existed which supports a conviction for murder. Defendant fired three shots at two persons, at close range. Two of the bullets entered the decedent's body during the altercation. There was testimony which tended to show that defendant was the aggressor. Accordingly, his first assignment is overruled.

### III

Defendant contends in his last two assignments of error that the trial court erroneously instructed the jury that he had the burden of proving self-defense and that he must show the victim was the aggressor in order to establish self-defense.[2]

The rule for examining jury instructions is enunciated in *State* v. *Price* (1979), 60 Ohio St. 2d 136 [14 O.O.3d 379], paragraph four of the syllabus:

"A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge. (*Cupp* v. *Naughten* [1973], 414 U.S. 141, 147, followed.)"

The trial judge did not say self-defense is never available to an aggressor. The court's instruction clearly explained that an aggressor's action may be justified as self-defense if he previously withdrew from the confrontation in good faith.

The Supreme Court stated in *State* v. *Melchior* (1978), 56 Ohio St. 2d 15, at 20-21 [10 O.O.3d 8]:

"To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray, *Stewart* v. *State* (1852), 1 Ohio St. 66, 75; *State* v. *Doty* (1916), 94 Ohio St. 258; *State* v. *Morgan* (1919), 100 Ohio St. 66, 72; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, *Marts* v. *State* (1875), 26 Ohio St. 163, paragraph two of the syllabus; *State* v. *Champion* (1924), 109 Ohio St. 281, paragraph one of the syllabus; *State* v. *Sheets* (1926), 115 Ohio St. 308, 310; and (3) the slayer must not have violated any duty to retreat or avoid the danger, *State* v. *Peacock* (1883), 40 Ohio St. 333, 334; *Graham* v. *State* (1918), 98 Ohio St. 77, 79."

Thus, the trial court did not err in its instruction on this subject.

Nor did it err by instructing the jury that the defendant had the burden of proving self-defense by a preponderance of the evidence.[3] This court has repeated-

---

[2] Specifically, defendant objects to the following instruction:

"The defendant must establish that the other party was the aggressor, and that the defendant did not provoke and cause the death. The plea of self-defense is not available to a person who starts a fight unless, in good faith, he withdraws from the contest and informs the other party or parties of his withdrawal, or, by word or acts reasonably indicates that he has withdrawn and is no longer participating in the fight."

[3] R.C. 2901.05 in relevant part provides:

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.

"* * *

ly held that Ohio's criminal code constitutionally assigns that burden of proof to the defense. Those decisions have never suggested that a defendant asserting self-defense has the burden of proving himself innocent. Rather, self-defense is an affirmative defense which justifies otherwise unlawful conduct; the absence of that justification is not an element of crimes set forth in R.C. Chapter 2903. Cf. *State v. Frost* (1979), 57 Ohio St. 2d 121 [11 O.O.3d 294].

In *Engle v. Isaac* (1982), 456 U.S. 107, the United States Supreme Court stated, at page 797, that the argument against this assignment of the burden of proof asserts "a colorable constitutional claim." However, the court's opinion concluded at page 795:

"A careful review of our prior decisions reveals that this claim is without merit. Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime. Compare *Mullaney v. Wilbur* [(1975), 421 U.S. 684], *supra,* with *Patterson v. New York* [(1977), 432 U.S. 197], *supra.*" (footnote omitted.)

The elements of murder and attempted murder are expressly delineated in R.C. 2903.02 and 2923.03. The absence of self-defense is not an element of those offenses. Evidence concerning self-defense may not be relevant until the state proves the statutory elements of the crime. The defense is in the nature of a confession and avoidance, by which defendant essentially admits the existence of facts which tend to establish the elements of the crime. In *Patterson v. New York* (1977), 432 U.S. 197, the court's opinion states at page 210:

"* * * Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here."

Although the *Patterson* case did not directly concern self-defense as an affirmative defense, we believe the rationale expressed in the opinion there is equally applicable here. Defendant's last two assignments of error are overruled.

The trial court's judgment is modified to reduce the conviction for aggravated murder to a conviction for murder, and it is otherwise affirmed.

*Judgment accordingly.*

PARRINO, P.J., and NAHRA, J., concur.

---

"(C) As used in this section, an 'affirmative defense' is either of the following:

"(1) A defense expressly designated as affirmative;

"(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."