### State v. Miller
[Cite as 2 AOA 622]

*Case No. 1987*
*Portage County, (11th)*
*Decided March 23, 1990*

*R.C. 2903.01*

David W. Norris, Prosecuting, Attorney David P. Foster, Asisstant prosecutor, 466 South Chestnut Street, Ravenna, Ohio 44266, For Plaintiff-Appellee.

Timothy J. Hart, Esq., 136 North Water Street, Suite 209 Kent, Ohio 44240, For Defendant-Appellant.

FORD, J.

On October 12, 1982 at approximately 9:30 p.m., the Portage County Sheriff's Department received a phone call from appellant, Michael Miller (appellant), reporting a suicide at 1186 Heartwood Circle, Suffield, Ohio. After responding to the call, the detectives, upon their arrival at the scene, found one Harriet Pletcher lying on the bathroom floor, with a handgun in her right hand, shot once in the face. Appellant, who had been living with the decedent, was present when the officers arrived. Believing the circumstances of the situation to be suspicious in nature, and that appellant might have been involved in the decedent's death, the officers interrogated the appellant. As a result of these interrogations, appellant was arrested in the early morning hours of October 13, 1985.

Appellant was charged with aggravated murder. At a preliminary hearing on October 21, 1985, however, the court made a finding on no probable cause to bind appellant over on the aggravated murder charge. Subsequently, appellant was indicted for the charge of receiving stolen property. On December 27, 1985, appellant filed a motion to suppress all statements taken in violation of his *Miranda* rights. (Appellant had been properly *Mirandized* at the commencement of his custodial interrogation and had requested to have his attorney present prior to the commencement of further questioning. Nevertheless, one of the detectives remained in the room with appellant, and a conversation ensued between them, during which appellant made statements which apparently played a role in his indictment for possession of a stolen weapon.) Appellant's motion to suppress was granted by the Portage County Court of Common Pleas and affirmed in this court in *State* v. *Miller* (December 19, 1986), Portage App. No. 1667, unreported.

On November 12, 1987, appellant was indicted on the charge of aggravated murder, pursuant to R.C. 2903.01, as well as on the charge of committing a felony involving a firearm, pursuant to R.C. 2929.71. The trial commenced on April 4, 1988.

At trial, the state introduced considerable evidence as to reasons the decedent could (or would) not have committed suicide. The evidence included: the decedent's fear of firearms; the recent recovery of the decedent from surgery intended to repair a back injury, which had caused her to be unable to grasp objects firmly with her right hand; the distance from which the gun was shot, apparently twelve

to eighteen inches away, which was inconsistent with evidence introduced of the decedent's arm span; the decedent's state of mind, which was neither depressed nor suicidal; the decedent's social plans for the evening in question, which she was apparently preparing for at the time of the shooting; the impossibility, according to expert testimony, of the decedent being able to continue grasping the gun in her hand after the shooting, given the damage to the spinal cord caused by the bullet. Evidence was also introduced that the gun in question was usually under the control of appellant, who normally kept it locked in his trunk.

The gun in question was a .22 magnum. This gun is a single action revolver, meaning it must be cocked prior to the shooting of each bullet. When police discovered the gun in decedent's hand the chamber contained five rounds, two of which had been previously fired. The officers discovered other bullet holes in the living room.

Evidence as to appellant's whereabouts at the time of the crime was inconsistent. Wes Hardman, a state witness, placed appellant at Wright's Bar until approximately 8:35 to 8:40 p.m. Willis Miller (unrelated to appellant) testified that appellant arrived at the K Bar between 8:15 and 8:50 p.m. and left at approximately 8:45 to 9:00 p.m. Both bars were approximately one to one and a half miles away from the 1186 Heartwood Circle residence. Roy Spidle, one of the decedent's neighbors, testified that he saw appellant arrive at the decedent's home at around 8:20 to 8:25 p.m. and not leave. Spidle further claimed to have heard a shot at approximately 8:45 p.m. The decedent's other neighbor, Ted Proudfoot, testified that he heard the decedent arguing with a man at around 8:45 p.m. and heard two shots between 9:00 and 9:05 p.m.

There was no direct physical evidence to link appellant with the shooting. His fingerprints were not found on the gun, and the atomic absorption test (for gunpowder residue) proved negative.

The state's witness, Jeffrey Leynn, of the Ohio Department of Criminal Investigation, testified that it was not at all unusual to fail to find gunpowder residue in atomic absorption tests. Leynn also stated that the type of ammunition used in the death of decedent did not produce the necessary amounts of barium and antimony necessary to leave traceable residues.

The state introduced five witnesses who testified to confessions made to them by appellant. The first, Tina Wilson, was an employee of the Portage County Sheriff's Department. Her testimony was that appellant made several statements to her during the booking procedure. She wrote down all but one of these statements ("Do you know what its like to look at somebody you love that's dead; it's wrong that I'm here; my girlfriend's been killed; being there was hell; I'm being booked because I found her." The statement she omitted to write down, purportedly because it unnerved her, was "I killed her and I made love to her afterwards." Cross examination elicited the admission that Wilson had not recounted her story to anyone until January of 1988, in preparation for trial. Brett Hoover, a corrections officer for Portage County testified that during the prison intake procedure for appellant, he noticed that appellant had several scratches on his body. When he asked if appellant would like medical attention for them, appellant replied that he had received the scratches from making love to a (or the) woman that's deceased.

The state also introduced the testimony of Dawn Whitzell, the sister of the woman appellant was living with subsequent to the decedent's death. Whitzell (who was apparently also sleeping with appellant) stated that appellant, while intoxicated, told her that he had gotten into a fight, gone elsewhere for an alibi, and returned to find that the decedent had bled to death. Finally, two prisoners who were in the Portage County Jail at the same time as appellant testified that appellant told one of the prisoners that he had killed the decedent, though he did not mean to do so.

Appellant moved for a directed verdict at the close of the state's evidence, stating that the state had failed to prove all elements of the crime. This motion was denied by the trial court. After six days of testimony, the case was presented to the jury. During the jury's deliberations, questions were forwarded to the trial court regarding the reason that it had taken two years to indict appellant. The trial court, over appellant's objection, returned the following response. "This is not a question of law so this is not an area where the Court can offer you guidance. Remember as best you can any evidence regarding the investigation, but remember this is not an element of the offense." The jury also inquired as to the exact definition of aggravated murder. In response, the court

reinstructed the jury on the issues of aggravated murder and the lesser included offenses therein.

Appellant was found guilty of aggravated murder, and for commission of a felony with a handgun. Appellant now timely brings this appeal before this court, and raises the following assignments of error:

"1. The trial court erred in overruling defendant's motion for a directed verdict as the state presented insufficient evidence, as a matter of law, to convince a reasonable juror of the defendant's guilt beyond a reasonable doubt.

"2. The trial court erred in denying defendant's motion for a new trial as the evidence presented at trial was insufficient, as a matter of law, to convince a reasonable juror of the defendant's guilt beyond a reasonable doubt.

"3. The trial court erred in denying defendant's motion for a directed verdict and motion for a new trial as a conviction on the charges of aggravated murder or murder was against the manifest weight of the evidence.

"4. The trial court erred to the defendant's prejudice through its answer to the jury's inquiry regarding the lapse of time between the crime and the defendant's indictment.

"5. The two and one half year delay between defendant's original arrest and the commencement of trial denied defendant's right to a speedy trial."

Appellant's first and second assignments of error, which he discusses concurrently, as well as appellant's third assignment of error, discuss substantially similar issues of law and will therefore be discussed in a consolidated fashion. The underlying theme that unites appellant's first three assignments is that the state lacked sufficient evidence in this case to prove an essential element of its case. The element referred to by the appellant is "prior calculation and design". R.C. 2903.01(A) states that "No person shall purposely, and with prior calculation and design, cause the death of another." Appellant's argument, simply put, is that the state failed to prove this element of the offense. Absent proof of this element of this offense, appellant concludes, the trial court erred in overruling his motion for a directed verdict at the close of the state's evidence, failing to grant him a new trial, and imposing sentence.

Appellant argues first that the trial court erred in failing to grant his motion for a directed verdict, pursuant to the auspices of Crim. R. 29(A). This rule states that:

"The Court on motion of a defendant *** after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment *** if the evidence is insufficient to sustain a conviction of such offense or offenses. ***" Crim. R. 29(A).

Appellant made his motion for a directed verdict at the close of the state's case. After the denial of this motion, however, appellant proceeded to put on evidence on his own behalf. Consequently, "any error which might have occurred in overruling the [Crim. R. 29(A)] motion is waived." *State* v. *Whitmeyer* (1984), 20 Ohio App. 3d 279 at paragraph four of the syllabus; *State* v. *Deboe* (1977), 62 Ohio App. 2d 192.

As appellant has, in effect, waived his objection to the denial of his motion, this court may examine the original objection only if we find it to be plain error, under Crim. R. 52.

"Plain error has been characterized as 'obvious and prejudicial,' an error which if permitted to stand, though neither objected to nor affirmatively waived, would affect in a 'material and adverse' manner the character of and public confidence in judicial proceedings. *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207 [24 O.O.3d 316]; *State* v. *Craft* (1977), 52 Ohio App. 2d 1 [6 O.O.3d 1]." *State* v. *Carter* (1985), 23 Ohio App. 3d 27, 28.

Examination of the record here indicates that appellant, whatever the merits of his objection, affirmatively waived it when he adduced evidence on his own behalf since there was no renewal of the Crim. R. 29 motion at the end of appellant's defense. Consequently, this court cannot consider the issue of the appropriateness of the trial court's denial of appellant's Crim. R. 29(A) motion under the rubric of "plain error".

Appellant's first assignment of error is without merit.

There is, however, no indication in the record that appellant acted in any way which could be construed as a waiver of his motion for a new trial, subsequent to its denial, and thus this court is free to examine appellant's assignments of error (which are intertwined with his contentions about the sufficiency/manifest weight of the evidence) raised in the second and third assignments.

The unifying leitmotif that underscores appellant's disparate arguments is, as noted, that the state has failed to furnish sufficient

evidence to demonstrate that appellant killed the decedent with prior calculation and design.

The test for determining whether the state has adduced sufficient evidence to sustain a conviction was set forth by the United States Supreme Court as follows:

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia* (1979), 443 U.S. 307. See, also, *State* v. *Klemencic* (Dec. 23, 1983), Lake App. No. 9-309, unreported at 3; *State* v. *Horvath* (June 15, 1984), Lake App. No. 10-073, unreported.

Additionally, because the evidence under consideration is largely circumstantial, this court is mindful of the dictates of *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, which holds that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *Kulig, supra,* at syllabus.

The *Kulig* test is often cited but, in practice, proves difficult to apply. *State* v. *Griffin* (1979), 13 Ohio App. 3d 376, 377; *State* v. *Graven* (1978), 54 Ohio St. 2d 114. In its attempt to clarify *Kulig*, the first district hypothesized:

"We take it *Kulig* does not stand for the proposition that whenever the defendant offers any theory of innocence whatsoever, even if reasonable, he must be discharged *ipso facto.* *** *Kulig* stands for the proposition that situations may arise when the circumstantial evidence is so attenuated that reasonable minds would never find that the desired fact (an essential element, for instance) has been established beyond a reasonable doubt." *Griffin, supra,* at 377.

Circumstantial evidence itself is defined as "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance" with common experience and everyday dealings. *Griffin,* at 377. However, the trier of fact must be certain to draw only one inference from each piece of direct evidence. "An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence." *Sobolovitz* v. *Lubric Oil Co.* (1923), 107 Ohio St. 204, at second paragraph of the syllabus. This does not mean that each piece of circumstantial evidence can only be interpreted one way. To the contrary, circumstantial evidence may be interpreted in a number of methods, depending on the inference drawn by the trier of fact, and more than one independent inference may be made from the same evidence. The import of *Sobolovitz, supra,* is that the trier of fact cannot make an inference through circumstantial evidence, and then draw another inference, based upon the first inference and unsupported by the evidential table.

Appellant's argument before this court states that even if, *arguendo,* this court finds sufficient evidence to prove that he was present at the time of decedent's death, the state still failed to affirmatively establish the existence of the required intent with prior calculation and design. Instead, appellant asserts, such evidence is equally susceptible of an interpretation consistent with an unintentional firing of the firearm resulting from intoxication or the intentional discharge of the firearm during the heat of an argument.

Appellant itemizes, for this court, evidence which purportedly supports the element of prior calculation and design. This itemization, with the state's additions, reads as follows: On the evening of the crime, appellant told Willis Miller that "he had a problem to take care of." Additionally, appellant made a comment to the decedent, overheard by John Shelter, that he "was not leaving" the decedent's house. The state presented evidence as to appellant's jealous temper and his disinclination to move out of the decedent's home. Further, the state demonstrated that the decedent was desirous of terminating the relationship with appellant, and she had packed his bags on the night of her death.

The state also presented evidence that the gun, which was normally in appellant's trunk, was inside the decedent's home, that it needed to be cocked for each shot, and that there were live rounds found under the couch cushion in decedent's home. While the state admits that none of these pieces of evidence, by themselves, demonstrate prior calculation and design, the state further argues that the evidence, when considered *in toto* and construed in its favor, does support a finding of guilty on this element of the offense.

This court finds the state's contentions to be without merit. The state has taken the presented evidence and woven it into a web of inferences which strains credulity beyond even the most favorable construction of the evidence in the state's favor. As appellant correctly asserts, the state presents no evidence which demonstrates that "the problem" appellant had

to take care of was the murder of the decedent. An equally rational explanation of the evidence, under *Kulig,* would be that the "problem" appellant was facing was his imminent eviction, and the reason he left the bar was to try to talk the decedent out of throwing him out of her home. Nor does the fact that appellant was a jealous man lead to an inference of prior calculation and design, as there is no indication the decedent was throwing appellant over for another man.

The inferences extrapolated from the physical firearm evidence are equally unsubstantiated. There is no evidence that the gun was not in the house prior to the decedent's death or, if it was outside at the time of the crime, that it was appellant who brought it into the home. Further, there is no evidence that it was appellant who loaded the gun on the evening of October 12, 1985, or any evidence that connects the bullets found under the couch to the decedent's death or that would even indicate that the bullets were placed under the couch pillows on the evening in question.

While it can certainly be inferred that the gun, which fired the projectile that killed the decedent, was cocked and fired prior to the decedent's death, this fact too is insufficient, without further evidence, to establish prior calculation and design. "The kind of momentary deliberation or instantaneous premeditation" taken in order to cock and fire a firearm is not sufficient to demonstrate this element of the offense. *State* v. *Davis* (1982), 8 Ohio App. 3d 205, 207; see, also, *State* v. *Toth* (1977), 52 Ohio St. 2d 206, 214 ("momentary deliberation, or acts done on the spur of the moment, are [not] sufficient to demonstrate premeditated murder").

In *State* v. *Jenkins* (1976), 48 Ohio App. 2d 99, the eighth district ruled that the evidence was insufficient to demonstrate prior calculation and design in a case where the defendant went to his car, removed a shotgun and fired upon the victim, holding that "'[p]rior calculation and design' sets up a *** more demanding standard than the old first degree standard of 'deliberate and premeditated malice'. 'Prior calculation and design' require some kind of studied analysis ***. Momentary premeditation is no longer sufficient." *Jenkins, supra,* at the first paragraph of the syllabus. Similarly, *Davis, supra,* stated that prior calculation and design was not proved when the evidence demonstrated that the crime was committed in reaction to "an instantaneous eruption of events." *Id.* at 207.

The evidence, when construed most favorably in the state's favor, demonstrates that witnesses saw the appellant arrive at the decedent's residence. Appellant apparently arrived prior to the decedent's death (a neighbor overheard an argument between the decedent and an unidentified male) and evidently (again, construing the testimony of the confessions most favorably in behalf of the state) appellant shot and killed the decedent. However, there is no evidence which demonstrates that appellant, with prior calculation and design, formulated a plan for killing the decedent. The record is devoid of any evidence, even in the appellant's admission statements, that is legally sufficient to demonstrate prior calculation and design. Consequently, the trial court was in error in ruling that the evidence adduced by the state was legally sufficient to present the case to the jury on that particular charge. While the evidential table may well support another category of homicide, we are reluctant to express any definitive conclusion as to a lesser category of homicide, based on the state of the record before this court.

Appellant's second and third assignments of error, as they relate to the sufficiency of the evidence presented to demonstrate prior calculation and design, have merit.

Appellant's fourth assignment of error challenges the trial court's answer to the jury's queries about the length of time between the decedent's death and appellant's indictment. Appellant contends that, by telling the jury that this question was "not an element of the offense", the trial court committed reversible error and directs this court to *Gates* v. *Strong* (1966), 14 Ohio App. 2d 121, 125-6, which stated that an instruction constitutes reversible error when there is a probability that the language misled the jury. Appellant further urges that it is reversible error to give an inappropriate response to a jury question. *Cleveland* v. *Barnes* (1984), 17 Ohio App. 3d 30, 33.

As the state correctly notes, however, there is nothing per se incorrect about the trial court's response to the jury's questions. In fact, questions about the length of time taken between the decedent's death and appellant's indictment are, at best, tangential to the elements of the offense. Moreover, while the trial court may not have phrased its response in the most optimal manner, there is no evidence that the response in any way misled the jury or relieved the state of its burden of proving the

elements of the offense or that the statement itself was a misstatement of law.

Appellant's fourth assignment is without merit.

In appellant's final assignment of error, he contends that an unjustified two year delay in procuring defendant's indictment violates his constitutional rights to speedy trial. Appellant cites, in conjunction with this assignment, *United States* v. *Ewell* (1966), 383 U.S. 116, 120 and *State* v. *Meeker* (1971), 26 Ohio St. 2d 9, 17, which held that "[u]njustifiable delays in commencing prosecution, as well as unjustifiable delays after indictment" violate a defendant's right to a speedy trial. Appellant further contends that this two year time period enabled the state to manufacture evidence, hide witnesses so that the appellant could not question them, and present questionable testimony to the jury.

It is in society's interest that the state be given due time for its investigations into the crimes of aggravated murder. Society has not imposed a statute of limitations period on this crime for this reason. R.C. 2901.13(A). There is no evidence in the record indicating that the state utilized its two years of investigation for any purpose other than the investigation of this case or for delay's sake alone in the hope of discovering more substantial evidence of guilt of the crime of aggravated murder. Appellant was brought to trial within the 270 day time period required by statute after arrest.

Prior to his indictment, appellant was not imprisoned on this charge. The law does not require the state to hurry through its investigation and, as *Ewell, supra*, states, this "requirement of unreasonable speed would have a deleterious effect upon both the rights of the accused and upon the ability of society to protect itself." *Id.* at 116.

Appellant's final assignment is without merit.

Therefore, for the reasons set forth in this opinion, it is the order of this court that the judgment of the trial court is reversed and remanded for new trial consistent with the dictates of this opinion.

*Judgment reversed and cause remanded.*

CHRISTLEY, P.J.,
MAHONEY, J., Concur.