OPINION
Defendant, Michael A. Galluzzo, appeals from his conviction for disorderly conduct.
Galluzzo's conviction was entered by the court after a trial to the bench. No record was made of the trial proceeding. Galluzzo and the State have, therefore, submitted an Agreed Statement of the Evidence pursuant to App.R. 9(C). It reads as follows:
 Michael Galluzzo, the appellant herein, married Teresa Galluzzo kna Cook in 1987 and they were divorced in 1994. The parties had two children, Sarah Galluzzo, age 10 and Kelsey Galluzzo, age 7. Mrs. Galluzzo remarried in August of 1998 to Jim Cook. Since the Galluzzo's divorce, there has been a lengthy history between the parties concerning custody and visitation. Due to several controversies between the parties, the Court has ordered that the exchanges of the children for visitation are to take place at the St. Paris, Ohio police station. Michael Galluzzo currently receives the standard order of visitation as set forth by the rules of the Champaign County Domestic Relations Court.
 On October 8, 1999, at approximately 6:00 p.m., Mr. Galluzzo met Mr. and Mrs. Cook at the St. Paris, Ohio police department for exchange of the children. Mr. Galluzzo was on crutches from his previous knee reconstruction surgery, which occurred several weeks prior to this incident. Mr. Galluzzo approached the Cook's van and the children opened the door to get out and go with their father to his residence. Mr. Galluzzo had a letter which he wished to give to the Cooks which would discuss upcoming visitation dates. Mr. and Mrs. Cook had no idea of the contents of the letter as testified to in Court. Mr. Galluzzo handed the letter to his daughter and told her to hand it to Mrs. Cook. Mrs. Cook stated she did not want the letter and would not take it. It was the testimony of Mr. Galluzzo that he tossed the letter onto the back seat of the van. The Cooks testified that the letter was not tossed, but was thrown into the van by Mr. Galluzzo, entering the van to do the same.
 Mr. Galluzzo and his two daughters began their walk home. Mr. Cook jumped out of the van yelling at Mr. Galluzzo. Mr. Galluzzo was approximately 30 to 40 feet away from the van and was continuing on his way on his crutches. Mr. Cook testified that he "confronted" Mr. Galluzzo with the letter. He further testified that he put the letter upon the chest of and into the shirt of Mr. Galluzzo. He testified that this was his only contact with Mr. Galluzzo on his part. Mr. Galluzzo testified that Mr. Cook shoved the letter upon his chest and struck him.
 Mr. Galluzzo attempted to back away from Mr. Cook but could not proceed any further due to the fact that he had been backed up against the police station wall. This statement was also testified to by two independent witnesses. (Transcript page 8 and 13) Mr. Cook did not substantiate this statement by Mr. Galluzzo.
 Although Mr. Cook denied striking Mr. Galluzzo, two independent witnesses, Gloria Larch and Robert Pullins, along with Mr. Galluzzo testified that Mr. Cook struck him. (Transcript page 4 and 13-14). Both of these witnesses recalled seeing a man come up to the man on crutches and start hitting him around the head. (Transcript page 4 and 12). Mr. Galluzzo raised his left arm to protect his face and then defended himself by delivering several blows to Mr. Cook thus backing him away. No further exchanged (sic) occurred between the parties. Both witnesses testified that they have no allegiance to Mr. Cook nor Mr. Galluzzo. (Transcript page 15).
 Gloria Larch ran into the police station and summoned officer Kevin Banks, who immediately exited the police station and confronted Mr. Cook and Mr. Galluzzo. Officer Banks testified in Court that when he first observed the parties that neither were involved in physical conflict. He further testified that he saw no punches thrown. The officer then separated the parties and examined both for any immediate injuries. Officer Banks testified that both denied being injured and that neither wanted medical treatment.
 Officer Bank's investigation included statements by the individuals and witnesses (included as exhibits). He charged Mr. Cook and Mr. Galluzzo with disorderly conduct. Mr. Cook appeared before the St. Paris Court and pled no contest and was found guilty. Mr. Galluzzo requested the matter be transferred to the Urbana Municipal Court where he had a trial before Judge Susan J. Fornof-Lippencott.
 The State of Ohio was represented by Urbana City Prosecutor, Gil S. Weithman and Mr. Galluzzo was represented by attorney Gregory K. Lind. Several pre-trial motions were made by defense counsel as follows:
 1. Counsel moved for a continuance of the bench trial due to the fact that the matter was originally scheduled as a pre-trial on that date. Counsel was notified by the Urbana Municipal Court clerk's office on Wednesday, November 24, 1999, the day before the Thanksgiving holiday. Counsel informed the clerk's office that he did not have subpoenas issued and was not prepared to go forth with the trial. Counsel was further informed that the trial was going forward and that they would assist with any necessary subpoenas.
 2. Defense counsel requested a continuance on a secondary issue in that he had not been provided with any discovery from the prosecutor's office. The record indicates that counsel filed a request for discovery and disclosure and for a bill of particulars on November 1, 1999. Upon this motion, at the time of trial, and the same day prior to trial, prosecutor Weithman provided Defendant/Appellant's counsel statements of witnesses, and that all discoverable information was provided prior to trial pursuant to discovery rules.
 Both motions were overruled and defense counsel was required to proceed with the trial even though unprepared. It must be further noted that defense counsel raised the issue of self defense and was immediately admonished by Judge Fornof-Lippencott for not having previously filed a notice to that issue. Defense counsel stated that it was difficult to file a notice of defense when he had not been given any discovery.
 It should be noted that the case was bifurcated to allow the attorney for the Defendant/Appellant to have the testimony of the witnesses to the incident and said bifurcation allowed for the testimony of the two witnesses as mentioned by the attorney for the Defendant/Appellant.
 After the presentation of the evidence, and introduction of exhibits, Judge Fornof-Lippencott found Mr. Galluzzo guilty of disorderly conduct. In her sentencing of Mr. Galluzzo she stated that she found him to be the aggressor in this situation by putting the letter on the back seat of the van. (Transcript page 19).
At the conclusion of the trial proceedings on December 10, 1999, the trial court entered its judgment of conviction and sentenced Galluzzo to pay a fine of $100 and court costs. Galluzzo filed his notice of appeal on December 30, 1999.
 FIRST ASSIGNMENT OF ERROR THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The legal standard on which weight of the evidence challenges in criminal prosecutions are determined was set out in State v. Thompkins (1997), 78 Ohio St.3d 380, at 386-387:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594.
A weight of the evidence review considers all the evidence, not only that which supports the verdict, as well as the credibility of the witnesses. Id. However, deference must be given to the trier of facts resolution of those issues. State v. DeHass (1967), 10 Ohio St.2d 230. Further, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Galluzzo was convicted of a violation of St. Paris Ordinance 132.04(A)(1), in that he did "recklessly cause inconvenience, annoyance, or alarm to another by engaging in fighting, in threatening harm to persons, or violent behavior." The ordinance is similar to R.C.2917.11(A)(1), which in addition prohibits threats to property and "turbulent behavior." Galluzzo's conduct in his fight with Cook demonstrates a violation of the ordinance. Galluzzo contended at trial, and contends on appeal, that he is not criminally liable because he only used force to protect himself from Cook.
Self-defense is an affirmative defense which operates to excuse or justify conduct for which the actor is otherwise criminally liable. R.C.2901.05(C)(2). The burden of its proof, by a preponderance of the evidence, is on the accused. R.C. 2901.05(A). However, only a defendant who "was not at fault in creating the situation giving rise to the affray" may resort to force in self-defense. State v. Melchior (1978),56 Ohio St.2d 15, 20. The not at fault requirement also means that the defendant must not have been the first aggressor in the incident. State v. Robbins (1979), 58 Ohio St.2d 74.
Webster's Third International New Dictionary defines "aggressive," inter alia, as an offensive action or procedure. The synonyms for "aggressive" that authority identifies include militant, assertive, self-assertive, pushing and pushful.
The trial court found that Galluzzo was the aggressor in the affray, a finding that barred his claim of self-defense and exposed him to criminal liability for violating the ordinance by engaging in fighting and violent behavior. In support of its finding, the court pointed out that it was Galluzzo who had put the letter on the seat of Cook's vehicle. Galluzzo testified that he "tossed" the letter. The Cooks testified that "the letter was not tossed, but was thrown into the van by Mr. Galluzzo, entering the van to do the same."
Both versions of how the affray started are credible. The trial court was entitled to believe the Cooks' version over Galluzzo's, as it apparently did, and we will not disturb the court's finding in that regard. Having done that, and especially in the context of the bad blood between Galluzzo and the Cooks that required them to meet as they did, the court could reasonably find that Galluzzo was the aggressor.
A defendant who is barred from claiming self-defense because he was at fault in initiating the affray may, nevertheless, be restored to his right to plead and prove the claim if he thereafter withdrew from the confrontation in good faith and retreated to a place of apparent security. State v. Davis (1982), 8 Ohio App.3d 205; State v. Reid (1965), 3 Ohio App.3d 215. There is evidence that Defendant-Appellant Galluzzo withdrew from the confrontation when he walked away from the Cooks' van after tossing the letter inside, and was then pursued and backed against a wall by Mr. Cook, whence the fighting ensued.
The agreed statement of the evidence reflects that the trial court found Galluzzo to be the aggressor. There is no further indication there, or in the court's judgment entry of conviction, that the court considered whether Galluzzo's right to claim self-defense was nevertheless restored by his withdrawal from the confrontation and retreat to a place of safety, or whether the court found from the evidence that he did those things at all. Because those issues may be determinative of Galluzzo's self-defense claim, we will sustain the assignment of error, reversing Defendant-Appellant's conviction and remanding the case to the trial court on our mandate to determine whether his right of self-defense was restored for the reasons stated. If the court finds that the right was not restored, it may enter a judgment of conviction. If the court finds that the right was restored, it must then determine whether Galluzzo proved his self-defense claim by a preponderance of the evidence. R.C. 2901.05. An affirmative finding warrants acquittal.
The first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED THE RIGHTS OF THE DEFENDANT-APPELLANT BY REQUIRING DEFENSE COUNSEL TO PROCEED AT TRIAL WITHOUT PROPER DISCOVERY AND PREPARATION.
On November 1, 1999, the court ordered a pre-trial conference in this case on November 29, 1999. The assignment was at some point converted to a trial, but defense counsel claims that he was unaware of that fact until November 24, 1999, when he was notified by the clerk. The Thanksgiving weekend intervened. On November 29, defense counsel requested a continuance to prepare. The court denied the request, at least as to the entire trial. Instead, the court ordered the State to proceed that date, continuing Defendant's case until December 10, 1999. The record reflects that he subpoenaed and obtained the testimony of his witnesses on that date.
The better alternative may have been to continue the entire trial to December 10, but presumably the court had good reason for not doing that. More to the point, Defendant has not indicated how he was prejudiced as a result. He was given a continuance to prepare his own case, which he presented on December 10. Absent some claim of prejudice, we cannot find that the trial court abused its discretion when it denied his request to continue the trial.
Defendant also argues that the trial court abused its discretion when on the day of the trial it denied his motion to continue, which was supported by a showing that the State had failed to provide the discovery he requested several weeks earlier.
 If a party fails to comply with the requirements of discovery, the court may order the party to permit discovery, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. Crim.R. 16(E)(3). A continuance, upon proper motion, is a favored method to avoid prejudice which may flow from a failure to provide discovery yet ensure that the charges against an accused are tried timely and fairly. State v. Edwards, supra; State v. Howard (1978), 56 Ohio St.2d 328, 10 O.O.3d 448, 383 N.E.2d 912; State v. Parson (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689; State v. Finnerty (1989), 45 Ohio St.3d 104, 543 N.E.2d 1233.
 Parson and Finnerty provide a three-part test to determine whether a trial court has abused its discretion in failing to grant a motion for continuance upon a [590 N.E.2d 304] showing that the state has failed to provide the discovery required of it. The inquiry must address (1) whether the prosecution's failure was a willful violation of Crim.R. 16, (2) whether foreknowledge of the evidence would have benefitted the accused in the preparation of his defense, and (3) whether the accused was prejudiced by the evidence concerned.
State v. Parks (1990), 69 Ohio App.3d 150, 155-156.
We do not know why the State failed to provide the discovery Galluzzo had requested of it until the day of trial, November 29. The State had requested subpoenas for its witnesses at trial on that date as early as November 11, so it was clearly aware that trial would proceed on that date. Defense counsel's belief that the proceeding scheduled for that date was a pre-trial conference may have led him to not press the State for discovery at an earlier time. In any event, it is clear that the State should have provided discovery before it did.
The State argues that Defendant-Appellant's attorney did not need the discovery earlier because Galluzzo, "being a participant in the same (events), had significant knowledge of the facts" (Brief, p. 5), and could provide his attorney with the facts he needed to investigate. Speaking bluntly, that dog won't hunt. It undermines the whole purpose of discovery, which is to prevent trial by ambush.
Nevertheless, Defendant-Appellant has failed to indicate how foreknowledge of the discoverable elements of the State's case would have benefitted him in preparing his defense. He was apparently unable to convince the court that he acted in self-defense in his fight with Cook. Even so, the court necessarily believed the Cooks' version of events concerning how the encounter began when it concluded that Galluzzo was the "aggressor." However, how timely discovery could have avoided that result is unclear.
We are generally disposed to reverse for discovery violations. However, as we stated in Parks, supra, the prejudice resulting can often be avoided through a continuance. The trial court employed that measure here, and Galluzzo had additional time to prepare his defense. Absent some basis to find that Galluzzo was prevented from effective cross-examination of the State's witnesses, which is not portrayed, we cannot find an abuse of discretion in the part of the trial court.
The second assignment of error is overruled.
 Conclusion
Having sustained the first assignment of error presented, we will reverse the judgment from which this appeal was taken and remand the case to the trial court to conduct further proceedings consistent with our opinion and pursuant to the mandate therein.
 _______________ GRADY, J.
BROGAN, J. and FAIN, J., concur.