JOURNAL ENTRY AND OPINION.
{¶ 1} This is an appeal by J.P. from an order of Juvenile Court Judge Janet A. Burney that adjudicated him delinquent on the charge that he engaged in conduct which, if committed by an adult, would have constituted the offense of felonious assault. He claims that the judge's findings were against the manifest weight of the evidence, that she impermissibly allowed the introduction of hearsay and "prior bad acts" evidence, and that it was error to refuse to find that he committed an assault in defense of another or as a result of the provocation of the victim. We affirm.
 {¶ 2} From the record we glean the following: On the evening of February 22, 2003, J.P. and A.C., also a minor, came into contact with the victim, an adult neighbor who was highly intoxicated. A heated argument ensued between A.C. and the victim, according to the victim, he thought at one point that the argument was going to end in an exchange of blows. The victim claimed that he decided to end the argument and attempted to walk away; A.C., however, then struck him on the side of his head, prompting him to wrestle A.C. to the ground. He stated that J.P. kicked him in the back and ribs at least six times and that A.C. got up and began kicking him in his chest region.
 {¶ 3} A neighbor claimed he heard shouting and, when outside his home, saw J.P. and another male repeatedly kicking the victim. He yelled at them to stop and the boys ran away. He said he stayed with the victim, who was complaining of rib pain and difficulty breathing, until an ambulance and the police arrived.
 {¶ 4} The victim sustained four fractured ribs as a result of the attack, and stayed overnight in the hospital as a result. He testified that he suffered great pain, had to sleep sitting up while his fractures mended, and was confined to his home for about two or three weeks because of his injuries.
 {¶ 5} L.B., a minor female outside whose home this incident took place, claimed that the victim was the aggressor, and that that he "charged" at A.C. and J.P., who were attempting to leave her home. She testified that she saw the victim and A.C. fall to the ground and she then went inside her home. Although she stated she only gave the names of J.P. and A.C. to the police, an investigating officer testified that she gave him a statement generally corroborating the victim's version of the events.
 {¶ 6} J.P. was arrested and charged with delinquency. Following trial, he was found to be delinquent for conduct the judge determined met all the elements of the adult offense of felonious assault under R.C.2903.11. He was committed to the custody of the Ohio Department of Youth Services for a minimum term of one year, to a maximum term of his attainment of the age of twenty-one years. J.P.'s assignments of error are listed in Appendix A.
I. MANIFEST WEIGHT OF THE EVIDENCE AND AN AFFIRMATIVE DEFENSE.
 {¶ 7} J.P. contends that his conviction for felonious assault was against the manifest weight of the evidence or, alternatively, that the greater weight of the evidence supported a conviction for aggravated assault instead of felonious assault. In a related argument, he claims that the evidence supported a finding that any assault he committed was done in the legitimate defense of A.C., which would constitute an affirmative defense to the charge. We cannot agree.
 {¶ 8} R.C. 2903.11 defines felonious assault, in relevant part, as follows:
"(A) No person shall knowingly do either of the following:
Cause serious physical harm to another or to another's unborn; * * *
(D) Whoever violates this section is guilty of felonious assault, a felony of the second degree. * * *"
 {¶ 9} R.C. 2901.01(A)(5)(c) defines serious physical harm to persons as "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity," and R.C. 2901.01(A)(5)(e) defines it as "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 10} In sustaining a challenge to a verdict based on the manifest weight of the evidence presented at trial, this court intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a factfinder which has "lost its way."[1] This power is subject to strict and narrow constraints.
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" * * *
The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[2]
 {¶ 11} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact."[3] If there was sufficient evidence for the triers of fact to find the defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence.[4]
 {¶ 12} In this case, the victim's testimony was straightforward and consistent: he attempted to disengage himself from a heated argument with A.C., he was attacked by A.C., and he was repeatedly kicked by J.P. as he laid on the ground after tackling A.C. The blows fractured his ribs which resulted in pain, hospitalization and a period of inactivity. Although he admitted that he was severely intoxicated on the evening of the assault, he testified that his recall of events was sound.
 {¶ 13} If the judge believed this testimony, which to some degree was corroborated by the neighbor's observation of J.P. and another juvenile kicking the victim, a finding of delinquency for acts constituting felonious assault would be proper. There is no indication that the judge lost her way in so finding, considering the deference we are to afford to her determinations as the trier of fact. The conviction is not against the manifest weight of the evidence, absent a sufficiently proven defense or justification for J.P.'s conduct. The fourth assignment of error is overruled.
 {¶ 14} During trial J.P. argued that he had a valid defense to the felonious assault charge: that his actions were taken in the legitimate defense of A.C., once the victim pulled him to the ground. We agree with the judge that he did not.
 {¶ 15} The affirmative defense of "defense of another" is available to one who uses appropriate force when coming to the aid of another if that other person was privileged to use such force.[5] A person claiming a right to self-defense may use that force which is reasonably necessary to repel an attack.[6] One who seeks to justify using force to repel an attacker through a claim of defense of another must prove the following elements by a preponderance of the evidence:[7]
"(1) the [other] was not at fault in creating the situation giving rise to the affray;
(2) the [defender] has a bona fide belief that [the other] was in imminent danger of death or great bodily harm and that [the] only means of escape from such danger was in the use of such force; and
(3) the [other] must not have violated any duty to retreat or avoid the danger.[8]"
 {¶ 16} The aggressor or instigator of a fight cannot normally raise self-defense as a justification for his own use of force unless he has withdrawn from the fight and informs the other party to the fight of the withdrawal.[9]
 {¶ 17} Appellate review of whether a defendant had established the elements of self-defense by a preponderance of the evidence at trial is undertaken under the standard of review for evaluating whether a conviction is against the manifest weight of the evidence.[10]
 {¶ 18} In this case, the victim testified that J.P.'s first kick struck him in the kidney, not the ribs, and that after that first kick, he released his hold on A.C. The judge found this testimony important in finding that all parties to this altercation, before and after it began, had ample opportunity to avoid it or retreat and that J.P. could have desisted in kicking the victim once A.C. was free to retreat from the affray. She explicitly found J.P.'s claim of "defense of another" inapplicable based on the implicit finding that the force he employed, in kicking the victim at least six times, was excessive in repelling any threat A.C. faced. She also found that J.P. and A.C. violated their duty to retreat from the fight or avoid the confrontation altogether. We cannot say that the judge lost her way or made findings representing a manifest miscarriage of justice in refusing to find that J.P. had established a valid defense of A.C. by a preponderance of the evidence. The first assignment of error is overruled.
 {¶ 19} Alternatively, J.P. argues that, at most, his conduct amounted to only aggravated assault, as opposed to felonious assault, and that a failure of the judge to so determine represents a manifest miscarriage of justice. We disagree.
 {¶ 20} For our purposes, aggravated assault contains the same essential elements as felonious assault, with the exception that, in an aggravated assault, the offender's infliction of serious physical harm to the victim was committed "while [the offender was] under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [offender] into using deadly force * * *."[11]
 {¶ 21} "Aggravated assault" is an offense of an inferior degree of felonious assault because its elements are identical to felonious assault except for the additional mitigating element of provocation.[12]
Furthermore, the Ohio Supreme Court has ruled that "provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force."[13]
 {¶ 22} Contrary to J.P.'s assertion on appeal, the judge did not fail to consider the offense of aggravated assault in premising her delinquency finding on a charge of felonious assault. The judge, in fact, considered and rejected J.P.'s claim that his conduct constituted, at most, aggravated assault. In so ruling, she stated that she did not see any evidence in the record to establish provocation. The judge implicitly credited the victim's testimony that A.C. was the initial physical aggressor, by finding that all parties to the fight had ample opportunity to walk away from it — and by implication rejecting the defense's assertion that the victim "charged" A.C. She also noted that, even if she accepted the defense, J.P. would have been justified in kicking the victim one time to compel him to release A.C., but once A.C. was free, no deadly force was authorized under the facts of the case. We agree, and see no manifest miscarriage of justice here. The second assignment of error has no merit.
 II. HEARSAY AND PRIOR BAD ACTS. {¶ 23} In his two remaining assignments of error, J.P. complains that much hearsay and prior bad acts testimony was admitted to his prejudice during the course of the trial, and that, accordingly, this case should be remanded for a new trial. We disagree.
 {¶ 24} The admission of evidence lies within the broad discretion of a judge, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.[14] Accordingly, we review the evidentiary rulings under an abuse of discretion standard. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt.[15]
"Error in the admission of evidence is not grounds for reversal unless substantial rights of the complaining party were affected or it appears that substantial justice was not done. * * * In determining whether a substantial right of the party has been affected, a reviewing court must decide whether the trier of fact would have probably reached the same conclusion had the error not occurred."[16]
 {¶ 25} Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.[17]
 {¶ 26} Evid.R. 404(B) states: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 27} Courts, while strictly construing Evid.R. 404(B) and resolving doubts against admissibility,[18] have applied the above rules in an attempt to minimize the amount of prejudice the admission of evidence of prior conduct will have on the disposition of the current charges faced by an accused. "It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible" to prove that a defendant has an undesirable trait, disposition or propensity toward the commission of a certain type of crime.[19] "Further, [the Ohio Supreme Court] has stated that evidence of other acts of a defendant is admissible only when it `tends to show' one of the matters enumerated in the [rule] and only when it is relevant to proof of the guilt of the defendant of the offense in question."[20]
 {¶ 28} J.P. contends the State was permitted to introduce irrelevant, prejudicial "other acts" testimony from the police officers involved in the case. In one instance, an officer testified that J.P. was known to associate with a local gang and that police initially suspected that the victim's beating was a gang-related incident. However, that officer shortly thereafter testified that no gang involvement had been proven and acknowledged that any allegation to that effect was mere speculation. J.P. also objected to testimony introduced to show that he had been involved in other criminal activity since his arrest in this case.
 {¶ 29} Even assuming that these instances of "prior bad act" testimony were inadmissible, J.P. is required to show prejudice before reversal may be had, and he has shown none. The judge gave very detailed reasons for her finding of delinquency and, from a review of the transcript, it is apparent that in an effort to determine J.P.'s responsibility for the assault, she considered only the specific facts relative to the events of the day it occurred. We are mindful of the principle that, absent evidence to the contrary, a judge in a bench trial is presumed to have considered only admissible evidence in rendering a decision,[21] and it is evident such was the case here. Having shown no adverse impact from the admission of the statements in controversy which may have been placed in the record against the mandates of Evid.R. 404(B), J.P. has not presented us with reversible error and is not entitled to a new trial as a result. Assignment of error three is overruled.
 {¶ 30} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[22] Hearsay is inadmissible, subject to specific exceptions.[23]
 {¶ 31} J.P. contests the admission of several statements at trial which he characterizes as prejudicial hearsay. An investigating officer was permitted to testify to statements made by the victim, the neighbor, and L.B. Specifically, he testified that the victim told him that the fight arose from a disagreement that he had with either A.C. or J.P. over some money the victim thought he was owed. The officer testified that the neighbor told him that he had observed a white male and a Hispanic male kicking the victim. Finally, he testified that the descriptions of events that the neighbor and L.B. gave to him on the day of the assault "matched."
 {¶ 32} The officer's statement that the neighbor and L.B. gave him descriptions that "matched," is not hearsay because the statement does not repeat the words of either party, it merely represented the officer's recollection that the accounts were consistent. The specifics of the victim's underlying argument with either A.C. or J.P. are irrelevant to the circumstances of the physical assault which occurred; in this case, why an argument began was unimportant in evaluating the culpability of any party for engaging in the physical altercation that ensued, and so any inclusion of background as to why A.C. and the victim began to argue is not prejudicial to J.P.
 {¶ 33} The officer's testimony about what the victim and neighbor told him, however, should have been excluded, as it did constitute hearsay. Again, however, as with the prior "bad acts" evidence that may have been introduced in this case, J.P. has not shown that the arguably inadmissible evidence introduced affected the outcome of the trial, given the judge's specific, detailed findings of fact, which focused less on the genesis of the assault, and more on the extent of J.P.'s involvement once A.C. and the victim fell to the ground. It is from this restricted viewpoint she ruled that J.P. committed the equivalent of a felonious assault upon the victim and we have ruled her decision to be in accord with the overall record of admissible evidence presented. Having failed to show that any inadmissible evidence contributed to the judge's ruling of delinquency, or showing that, but for the introduction of inadmissible evidence, the outcome of the trial would have changed, we find the admission of the officer's recount of the neighbor's statement to be harmless error that does not require reversal. The fifth assignment of error is overruled.
Judgment affirmed.
APPENDIX A: J.P.'s Assigned Errors.
 {¶ 34} "I. The Trial Court Erred When it Failed to Find That Appellant Had an Affirmative Defense of Self-defense or Defense of Others."
 {¶ 35} "II. The Trial Court Erred by Failing to Find the Appellant Guilty of a Lesser Offence [Sic] Despite the Overwhelming Evidence Supporting That Conclusion."
 {¶ 36} "III. The Court Denied the Appellant His Right of Due Process When it Erroneously Allowed Inflammatory and Prejudicial Evidence of His Prior Bad Acts."
 {¶ 37} "IV. The Appellant's Conviction Is Against the Manifest Weight of the Evidence."
 {¶ 38} "V. The Trial Court Erred by Admitting Several Improper Hearsay Statements."
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J., and ANTHONY O. CALABRESE JR., J., concur.
[1] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
[2] State v. Thompkins, supra at 387, 1997-Ohio-52 (internal cites omitted).
[3] State v. Thomas (1982), 70 Ohio St.2d 79, State v. DeHass (1967),10 Ohio St.2d 230.
[4] State v. Brown (1988), 38 Ohio St.3d 305, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040. See, also,State v. Jenks (1991), 61 Ohio St.3d 259, 273.
[5] See State v. Vera, Cuyahoga App. No. 79367, 2002-Ohio-974, citing State v. Wenger (1979), 58 Ohio St.2d 336.
[6] State v. Williford (1990), 49 Ohio St.3d 247.
[7] Id.
[8] See State v. Robbins (1979), 58 Ohio St.2d 74, at the syllabus, describing the elements one claiming self-defense must prove.
[9] In Re T.M., Belmont App. No. 01-BA-29, 2002-Ohio-2648, citing Statev. Davis (1982), 8 Ohio App.3d 205, see also, State v. Nichols, Scioto App. No. 01CA2775, 2002-Ohio-415.
[10] State v. Coleman, Cuyahoga App. No. 80595, 2002-Ohio-4421, citingState v. Roberts (2000), 139 Ohio App.3d 757. See, also, State v. Evans, Cuyahoga App. No. 79895, 2002-Ohio-2610, State v. Thomas (Aug 25, 1994), Cuyahoga App. No. 65300, State v. Gardner (March 30, 1989), Cuyahoga App. No. 55171.
[11] R.C. 2903.12(A). Aggravated assault, as is applicable here, is a felony of the fourth degree.
[12] Id.
[13] State v. Deem (1988), 40 Ohio St.3d 205.
[14] State v. Issa, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, Krischbaumv. Dillon (1991), 58 Ohio St.3d 58, 66. See, also, State v. Joseph
(1995), 73 Ohio St.3d 450, 460, 1995-Ohio-288.
[15] State v. Williams (1983), 6 Ohio St.3d 281, 290, certiorari denied (1983), 464 U.S. 1020.
[16] Kish v. Withers (1997), 123 Ohio App.3d 132, 136, 703 N.E.2d 825. See, also, Cincinnati v. Banks (2001), 143 Ohio App.3d 272, 290, dismissed, appeal not allowed, 92 Ohio St.3d 1413.
[17] State v. Brown (1992), 65 Ohio St.3d 483, 485.
[18] Id.
[19] State v. Wilkinson (1980), 64 Ohio St.2d 308, 314.
[20] Id. at 315.
[21] State v. Williams (Oct. 8, 1998), Cuyahoga App. No. 73468, citingColumbus v. Guthman (1963), 175 Ohio St. 282. See also, State v. Richey
(1992), Ohio St.3d 353, 357-358, 1992-Ohio-44: "[I]n a bench trial, the court must be presumed to have `considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'"
[22] Evid.R. 801(C).
[23] Evid.R. 802.