[Cite as *State v. Ross*, 2017-Ohio-675.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No. OT-16-004

   Appellee                          Trial Court No. 13 CR 077

v.

Randall Ross                                     **DECISION AND JUDGMENT**

   Appellant                         Decided: February 24, 2017

* * * * *

James VanEerten, Ottawa County Prosecuting Attorney, and
Joseph H. Gerber, Assistant Prosecuting Attorney, for appellee.

Russell V. Leffler, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Randall J. Ross, appeals the

March 1, 2016 judgment of the Ottawa County Court of Common Pleas. For the reasons

that follow, we affirm the trial court judgment.

# I. BACKGROUND

{¶ 2} Randall Ross and his wife, Amy, were experiencing marital difficulties. In February of 2013, Amy began staying with her sister, A.S., and her 13-year-old niece, S.S. They lived on Luetz Road, just outside of Oak Harbor, Ohio.

{¶ 3} On March 27, 2013, Ross told a co-worker that Amy wanted to reconcile and that he was leaving work early to meet with her. He said that he hoped to take her to lunch and then possibly to dinner and a movie. He left work in Pemberville, Ohio, at 10:15 a.m., and headed to his home in Fremont, Ohio, to clean up and change his clothes. When Ross arrived home, however, he discovered that Amy had retrieved her personal belongings and several items of furniture from their home. She also canceled their meeting. He sped off to confront Amy at her sister's home.

{¶ 4} When Ross arrived at A.S.'s home, he knocked on the front door. A.S. went around to the back door and locked it. She then asked Amy what she wanted to do, impliedly asking Amy whether she wanted A.S. to call the police or whether Amy wanted to handle the situation on her own. They decided that they would all go upstairs, hoping that if they didn't answer the door, Ross would go away.

{¶ 5} Ross kept knocking on the door, and A.S. again asked Amy what she wanted to do. Amy said that she would tell him to leave. She went downstairs, and A.S. could hear Amy and Ross talking through the door. Ross demanded that Amy let him in. Amy told him to leave or she would call the police, and she told him that A.S. and S.S. were

2.

home.  He asked why they were there, and Amy responded that it was S.S.'s spring break.

{¶ 6} A.S. started to descend the steps and Amy told her to call the police.  A.S. typed 9-1-1 into her cellphone, but neglected to hit "send."  Ross broke the door open, and Amy and A.S. ran up the stairs.  They saw that Ross had a gun.

{¶ 7} Ross chased after the sisters, and Amy and A.S. ran into S.S.'s bedroom, where S.S. was hiding in a closet.  They shut the door and pushed against it, trying to prevent Ross from entering.  Ross was pushing from the other side, and A.S. knew that they could not hold it shut.  She let go and ran to shield S.S.

{¶ 8} Ross stormed in and grabbed Amy by the hair.  He pushed her to the floor, and held the gun to her head.  Amy freed herself and ran to the other side of the bedroom.  Ross pointed the gun at Amy, and A.S. pleaded with Ross, "please don't do this."  Ross looked at A.S. and S.S., then looked back at Amy.  He took stronger hold of the gun, aimed at Amy, and said "you think you can take everything from me?"  He shot her in the chest, killing her.  Ross then put the gun underneath his chin and pulled the trigger.  Although the gun fired, he was still standing.  He raised the gun to the same spot and shot again.  This time he fell backwards to the floor.

{¶ 9} A.S. called 9-1-1 and told her daughter to leave.  She saw that Ross was still alive.  The gun was underneath his leg, so A.S. picked it up and set it on the window sill.  Ross got up, descended the stairs, and walked outside where he was confronted by law enforcement.

3.

{¶ 10} Ross was charged with aggravated murder, a violation of R.C. 2903.01(A) (count one); aggravated murder, a violation of R.C. 2903.01(B) (count two); murder, a violation of R.C. 2903.02(A) (count three); murder, a violation of R.C. 2903.02(B) (count four); aggravated burglary, a violation of R.C. 2911.11(A)(1) (count five); aggravated burglary, a violation of R.C. 2911.11(A)(2) (count six); and kidnapping, a violation of R.C. 2905.01(A)(3) (count seven). Counts one and two originally included four specifications, and counts three through seven each included one specification. Before trial, three of the specifications as to the aggravated murder charges were dismissed, leaving only a firearms specification as to each of the seven counts of the indictment.

{¶ 11} The case was tried to a jury beginning January 11, 2016. On January 14, 2016, the jury found Ross guilty on all counts. Following a short recess, the trial court sentenced Ross to a term of life in prison without parole on count one, 11 years on count six, and 11 years on count seven. It imposed an additional three years for each of the specifications. The specifications were ordered to be served concurrently to one another, and the sentences for the underlying offenses were ordered to be served consecutively to each other and consecutively to the sentences on the specifications. Counts two, three, and four, along with their corresponding specifications, merged with count one for purposes of sentencing, and count five, and its corresponding specification, merged with count six.

{¶ 12} Ross appealed, and he assigns the following errors for our review:

4.

I.  THE TRIAL COURT ERRED IN NOT DISMISSING THE CRIME OF KIDNAPPING AS AN ALLIED OFFENSE OF SIMILAR IMPORT TO BOTH MURDER AND AGGRAVATED BURGLARY.

II.  IT WAS AN ABUSE OF DISCRETION AND A DENIAL OF DUE PROCESS UNDER THE CONSTITUTION OF THE UNITED STATES AND THE STATE OF OHIO AND A VIOLATION OF CRIMINAL RULE 32 AND 2929.19 TO NOT ALLOW THE DEFENSE TO PRESENT EVIDENCE IN MITIGATION INCLUDING THE TESTIMONY OF A PSYCHOLOGIST PREVIOUSLY ORDERED TO ASSIST THE DEFENSE AND PAID FOR WITH TAX DOLLARS.

III.  THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY THAT THE MURDER CHARGES WERE LESSER OFFENSES OF AGGRAVATED MURDER DISTINGUISHED BY THE LACK OF PRIOR CALCULATION AND DESIGN AND THE COUNT 1 VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PARTICULARLY IN LIGHT OF THE FAULTY INSTRUCTION.

## II.  LAW AND ANALYSIS

### A.  Allied Offenses

{¶ 13} While the jury found Ross guilty of each of the seven charges in the indictment, the trial court sentenced Ross only on counts one (aggravated murder under R.C. 2903.01(A)), six (aggravated burglary under R.C. 2911.11(A)(2)), and seven

(kidnapping). The remaining convictions merged for purposes of sentencing. In his first assignment of error, Ross claims that the trial court erred in failing to find that the kidnapping conviction was an allied offense of similar import to both the murder and aggravated burglary charges.

{¶ 14} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. The Double Jeopardy Clause protects against a number of abuses. *Id.* Pertinent to this case is the protection against multiple punishments for the same offense. *Id.* To that end, the General Assembly enacted R.C. 2941.25, which directs when multiple punishments may be imposed. *Id.* It prohibits multiple convictions for allied offenses of similar import arising out of the same conduct:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus

as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 15} In *Ruff*, the Ohio Supreme Court examined in detail the analysis that must be performed in determining whether offenses are allied offenses of similar import under R.C. 2941.25. It identified three questions that must be asked: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Id.* at ¶ 31. If the answer to any of these questions is "yes," the defendant may be convicted and sentenced for multiple offenses. *Id.* at ¶ 25, 30. The court explained that offenses are of *dissimilar* import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. And it emphasized that the analysis must focus on the defendant's conduct, rather than simply compare the elements of two offenses. *Id.* at ¶ 30.

{¶ 16} The state urges that all three of the questions identified by the Ohio Supreme Court in *Ruff* must be answered in the affirmative. First, as to whether the offenses are of dissimilar import, it argues that the harm resulting from each crime differed: the harm resulting from the kidnapping was terror to Amy; the harm resulting from the aggravated burglary was that entry was gained into A.S.'s home; and the harm resulting from the murder was that Amy's life was ended.

{¶ 17} As to whether the offenses were committed separately, the state argues that they were: the aggravated burglary occurred when Ross arrived at the home and broke

7.

through the door after he was unsuccessful in negotiating entry; the kidnapping occurred when Ross, after following the victims up the stairs, grabbed Amy's hair and threatened her with a gun; and the murder occurred when he shot Amy in the chest.

{¶ 18} And as to whether each offense involved a separate animus, the state argues that they did: the aggravated burglary was committed to gain entry into the home; the kidnapping was committed to restrain Amy's liberty and to terrorize her; and the murder was committed to end Amy's life.

{¶ 19} Ross, on the other hand, argues that no significant time elapsed between when he entered the second floor of the home and when he shot his wife, thus no separate animus existed for kidnapping. While he suggests that "[t]he Aggravated Burglary might or might not be subject to allied offense analysis as related to Amy Ross," he fails to develop this argument in his brief.

{¶ 20} After a thorough review of the facts of this case, we conclude that the trial court did not err in failing to merge the kidnapping, murder, and aggravated burglary charges. The evidence at trial established that Ross broke in the front door, chased Amy up the stairs into a bedroom, pulled her by the hair, pushed her to the floor, placed the gun to her head, and yelled at her. He did not shoot her at that time. Amy freed herself from Ross' grasp, and she ran to the other side of the bedroom. At that point, he aimed the gun at her. He yelled, "You think you can take everything from me?" and, ignoring A.S.'s pleas, he shot Amy. Although these events happened quickly, we find that there was a distinction and separation between (1) the act of breaking in the door, (2) the act of

8.

holding Amy down with the gun to her head, and (3) the ultimate act of shooting her in the chest. The offenses, therefore, were not allied. As such, the trial court did not err in failing to merge Ross' kidnapping conviction with his murder and aggravated burglary convictions.

{¶ 21} Accordingly, we find Ross' first assignment of error not well-taken.

**B. Failure to Allow Mitigation Evidence at Sentencing**

{¶ 22} Earlier in this case, the trial court approved funds to retain a psychologist to evaluate Ross. Following Ross' conviction, defense counsel requested a continuance of the sentencing hearing so that it could present mitigation evidence from the psychologist. The trial court denied the request and proceeded to sentencing following a short recess. In his second assignment of error, Ross claims that this was an abuse of the trial court's discretion.

{¶ 23} Crim.R. 32 (A)(1) requires that at the time of imposing sentence, the court shall "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

{¶ 24} In addition to Crim.R. 32(A)(1), R.C. 2947.06(A)(1) provides that "the trial court *may* hear testimony in mitigation of a sentence." (Emphasis added.) As we recognized in *State v. Hayes*, 6th Dist. Lucas No. L-97-1385, 1998 Ohio App. LEXIS 6026, *2 (Dec. 18, 1998), the word "may" is permissive, thus it is within the trial court's discretion whether to permit witness testimony concerning mitigation. So while a

9.

defendant and his counsel must be permitted to speak at sentencing under Crim.R. 32(A)(1), the trial court may—but is not required to—hear testimony from any other witnesses in mitigation of a sentence. Because this decision is purely within the trial court's discretion, we review the court's decision for an abuse of discretion.[1] *State v. Anderson*, 172 Ohio App.3d 603, 2007-Ohio-3849, 876 N.E.2d 632, ¶ 20 (11th Dist.). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25} Here, as required, the trial court allowed both Ross and his counsel to make statements before imposing Ross' sentence. It was not obligated to consider testimony or evidence from any other witness, let alone continue the sentencing hearing for this purpose. We, therefore, find no abuse of discretion in the trial court's refusal to continue sentencing so that mitigation evidence could be provided by the psychologist who had examined Ross.

{¶ 26} Accordingly, we find Ross' second assignment of error not well-taken.

---

[1] The state insists that we must review Ross' second assignment of error under R.C. 2953.08(G)(2). Ross' challenge here, however, is not to the sentence imposed by the trial court; it is to the trial court's refusal to continue the sentencing hearing for the purpose of presenting mitigation evidence—a matter within its discretion. The abuse-of-discretion standard, not the contrary to law standard, is, therefore, appropriate. *See, e.g., State v. Smith,* 12th Dist. Fayette No. CA2014-05-013, 2015-Ohio-1094 (applying abuse-of-discretion standard to appellant's challenge to the trial court's failure to order a presentence investigation report).

10.

## C. Jury Instructions

{¶ 27} In his third assignment of error, Ross argues that the third count of the indictment—murder—was a lesser-included offense of count one—aggravated murder. He contends that the trial court erred in instructing the jury to consider each count of the indictment separately instead of explaining that count three was a lesser-included offense of count one, distinguished only by the element of "prior calculation and design." He claims that in light of this faulty instruction, the verdict on count one was against the manifest weight of the evidence.

{¶ 28} The state denies that murder is a lesser-included offense of aggravated murder because, it claims, "the jury could not have reasonably acquitted Appellant of Aggravated Murder and found him guilty of murder" given that the evidence of prior calculation and design was obvious. Secondly, it argues that considering the instructions as a whole, the jury was aware that the only difference between aggravated murder and murder was prior calculation and design.

{¶ 29} Ross acknowledges that this objection was not raised at trial and must, therefore, be reviewed under a plain-error analysis. Plain error is error that affects substantial rights. Crim.R. 52(B). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001)*, citing State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the

11.

outcome of the trial clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

{¶ 30} We first address the state's claim that murder is not a lesser-included offense of aggravated murder. This is simply incorrect. *See State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 36 ("Murder (R.C. 2903.02) is a lesser included offense of aggravated murder (R.C. 2903.01[A]). *State v. Mason,* 82 Ohio St.3d 144, 161, 694 N.E.2d 932 (1998). The sole difference is that prior calculation and design is absent from murder."). We do agree with the state, however, that viewed in their entirety, the jury instructions did not prejudice Ross.

{¶ 31} The trial court properly instructed the jury as to the elements of each offense and the legal definitions of the terms contained within those elements. While it may have been advisable to explicitly instruct the jury how the elements differed, the instructions provided by the court were correct.

{¶ 32} We also disagree that the verdict on count one was against the manifest weight of the evidence. When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and

12.

scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 33} Ohio courts recognize that to establish "prior calculation and design," the state must show that the accused killed the victim purposefully after devising a plan or scheme to kill. *State v. Davis*, 8 Ohio App.3d 205, 206-207, 456 N.E.2d 1256 (8th Dist.1982). "There must be some kind of studied analysis with its object being the means by which to kill." *Id.* While the degree of care and the length of time the offender takes to ponder the crime beforehand are not critical factors in themselves, "momentary deliberation" is insufficient. *State v. Taylor*, 78 Ohio St.3d 15, 22, 676 N.E.2d 82 (1997). Whether there exists prior calculation and design is a factual determination resolved on a case-by-case basis. *State v. Jones*, 91 Ohio St.3d 335, 345, 744 N.E.2d 1163 (2001).

{¶ 34} Traditionally, courts consider three factors in determining whether a defendant acted with prior calculation and design: (1) whether the accused and victim know each other, and if so, whether that relationship was strained; (2) whether the accused gave thought or preparation to choosing the murder weapon or murder site; and (3) whether the act was drawn out or whether it was an almost instantaneous eruption of events. *Taylor* at 19, citing *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976). In *Taylor*, for instance, the court found that even though the events

13.

elapsed in a two-to-three minute timespan, there was more than sufficient evidence of "prior calculation and design" where the defendant and the victim had a strained relationship and defendant brought a gun with him to the scene. *Id.* at 16-17.

{¶ 35} Here, the evidence at trial was that Ross and Amy were married and their relationship was severely strained, as demonstrated by both the testimony and the text messages entered into evidence as exhibits. Ross traveled from Fremont, Ohio, to Oak Harbor, Ohio, an approximately 30-minute drive, with a loaded weapon, intending to confront Amy after finding that she had removed furniture and personal belongings from the couple's home. He had the weapon with him as he knocked on the door, and brandished it as he chased Amy and A.S. up the stairs. He aimed the gun at Amy as A.S. pleaded with him not to go through with it. And before shooting her, he told Amy that she was not going to take everything from him. We find that this evidence demonstrated "prior calculation and design" and supported the jury's verdict.

{¶ 36} Accordingly, we find Ross' third assignment of error not well-taken.

### III. CONCLUSION

{¶ 37} For the foregoing reasons, we find that Ross' kidnapping, murder, and aggravated burglary convictions were not allied offenses; the court did not abuse its discretion in refusing to continue sentencing for purposes of allowing Ross to present mitigation evidence from a retained psychologist; the court properly instructed the jury on counts one and three of the indictment; and his conviction of aggravated murder was not against the manifest weight of the evidence. We, therefore, find Ross' assignments of

14.

error not well-taken, and we affirm the March 1, 2016 judgment of the Ottawa County

Court of Common Pleas.  Ross is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.             _____

JUDGE

James D. Jensen, P.J.       

_____

Christine E. Mayle, J.          JUDGE
CONCUR.

_____

JUDGE